UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JERRY D. GOODWIN, Individually and On Behalf of All Others Similarly Situated,   )<br>)<br>)<br>Plaintiff,   )<br>)<br>v.   )<br>)<br>ANADARKO PETROLEUM CORPORATION,   )<br>JAMES T. HACKETT, ROBERT G. GWIN   )<br>and M. CATHY DOUGLAS,   )<br>)<br>Defendants.   )<br>_____) | Civil Action No. 10 cv 04905 (PGG)<br><br>ECF Case |
| SHIRLEY HARRIS, Individually and On Behalf of All Others Similarly Situated,   )<br>)<br>)<br>Plaintiff,   )<br>)<br>v.   )<br>)<br>ANADARKO PETROLEUM CORPORATION,   )<br>JAMES T. HACKETT, ROBERT G. GWIN   )<br>and M. CATHY DOUGLAS,   )<br>)<br>Defendants.   )<br>_____) | Civil Action No. 10 cv 05894 (UA) |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION FOR CONSOLIDATION
OF RELATED ACTIONS, APPOINTMENT AS LEAD PLAINTIFF,
AND APPROVAL OF SELECTION OF LEAD COUNSEL OF MOVANT,
<u>THE PENSION FUNDS INVESTOR'S GROUP</u>**

**I.   <u>INTRODUCTION</u>**

The International Union of Operating Engineers Pension Plan ("Operating Engineers"), Hallandale Beach Police Officers' and Firefighters' Personnel Retirement Fund ("Hallandale"), and Miramar Police Officers' Retirement Plan and Trust Fund ("Miramar Police") (collectively, the "Pension Funds Investors' Group" or "Movant") respectfully submit this Memorandum of

Law in support of its Motion for (1) consolidation of the above-captioned actions, (2) appointment as Lead Plaintiff and (3) for approval of Movant's Selection of Lead Counsel.  With estimated losses in excess of $147,000 arising from their purchase of the common stock of Anadarko Petroleum Corporation ("Anadarko" or the "Company") between June 12, 2009 and June 9, 2010 (the "Class Period"), the Pension Funds Investors' Group has the "largest financial interest" in this putative class action, and otherwise meets the requirements of the Private Securities Litigation Reform Act ("PSLRA").

As institutional investors, the Pension Funds Investors' Group is precisely the type of investor that Congress had in mind when it passed the PSLRA in 1995, and is uniquely qualified to serve as lead plaintiff on behalf of the class (the "Class") proposed in the above-captioned actions.  The PSLRA's legislative history reflects that it was intended "to increase the likelihood that institutional investors will serve as lead plaintiffs" because, *inter alia*, such investors are presumed to "represent the interests of the plaintiff class more effectively than class members with small amounts at stake."  H.R. Rep. No. 104-369, at 34 (1995); *see Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 321 (2007) (PSLRA "aimed to increase the likelihood that institutional investors – parties more likely to balance the interests of the class with the long-term interests of the company – would serve as lead plaintiffs").  Thus, appointment of the Pension Funds Investors' Group as Lead Plaintiff in this securities action is appropriate, not only because Movant meets all of the prerequisites of the PSLRA, but also because such an appointment will fulfill the goals of that statutory scheme.

As demonstrated below and pursuant to the PSLRA, Movant is the "most adequate" plaintiff to represent those who purchased or otherwise acquired Anadarko's securities during the

Class Period and it should be appointed as Lead Plaintiff.  In addition, Movant has selected and retained Shepherd Finkelman Miller & Shah, LLP ("SFMS") to serve as Lead Counsel, a law firm with extensive experience in prosecuting securities fraud and other complex litigation matters. Accordingly, the Pension Funds Investors' Group's selection of counsel should be approved.

II.     **SUMMARY OF ALLEGATIONS**[1]

Presently pending before the Court are two related securities class action lawsuits (the "Actions") brought on behalf of those persons or entities that purchased or otherwise acquired the common stock of Anadarko during the Class Period.  Both Actions allege violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") (15 U.S.C. §§ 78(j)(b) and 78t(a)) and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5) against Defendant Anadarko, as well as the following individuals, who occupied senior management positions during the Class Period:  Defendant, James T. Hackett ("Hackett"), the Company's Chief Executive Officer, President and the Chairman of its Board of Directors; Defendant, Robert G. Gwin ("Gwin"), who was the Company's Chief Financial Officer and Senior Vice President of Finance; and Defendant, M. Cathy Douglas ("Douglas"), who was Anadarko's Chief Accounting Officer and Vice President (collectively, "Defendants").

Anadarko, a Delaware corporation headquartered in The Woodlands, Texas, engages in the exploration and production of oil and gas properties primarily in the United States, the deepwater of the Gulf of Mexico, and Algeria.  Complaint, ¶15.  In March 2008, Anadarko

---

[1] These facts are based upon the first-filed complaint, *Jerry D. Goodwin v. Anadarko Petroleum Corporation, et al.*, No. 10-cv-04905 (S.D.N.Y.), filed on June 23, 2010 (the "Complaint").

entered into a joint venture with BP Exploration & Production, Inc. ("BP") and MOEX Offshore 2007 LLC ("MOEX") to explore the Macondo/Deepwater Horizon well site and surrounding area located in the Gulf of Mexico. *Id.*, ¶34. According to the agreement, BP maintains a 65% interest in the well, with Anadarko controlling a 25% interest and MOEX controlling a 10%. *Id*.

Anadarko undertook the joint venture in the face of an inadequate Exploration and Spill Response Plan in connection with the Macondo/Deepwater Horizon well. The Exploration and Spill Response Plan was not adequate for response to any significant oil spill and contained material defects. *Id.*, ¶¶36-38. For example, the Exploration and Spill Response Plan stated that it had resources in place to respond to an oil spill of up to 250,000 barrels a day when, in fact, they could not provide for a spill involving even 5,000 barrels a day. *Id.*, ¶37. Further, the Complaint alleges that Defendants were aware of numerous Occupation Safety and Health Administration ("OSHA") violations of Anadarko's partner, BP. *Id.*, ¶39.

Despite Defendants' awareness of the inadequacy of the Exploration and Spill Response Plan and numerous safety violations of Anadarko's partner, BP, Defendants continually touted Anadarko's financial results, commitment to the environment, and risk profile. *See* Complaint, ¶5. For example, in a June 2009 interview, Defendants remarked that they would continue to engage in deep water drilling in a safe and environmentally responsible manner. *See id.*, ¶41. Again, in an August 3, 2009 press release, Hackett expressed confidence that Anadarko would continue to operate its deepwater drilling operations in the Gulf of Mexico in a safe and environmentally responsible manner. *See id.*, ¶44. In Anadarko's 2Q:09 Form 10-Q for the period ended June 30, 2009, Anadarko represented the purported effectiveness and sufficiency of the Company's controls and procedures. *See id.*, ¶46.

The Company issued a November 2, 2009 press release, which stated in part "[a]s a result of both improved operating performance and the absence of severe weather in the Gulf of Mexico, we expect our full-year sales volumes to be approximately 220 million BOE, up from our original midpoint of 210 million BOE at the beginning of the year, without increasing capital spending." Complaint, ¶50. On this news, shares of Anadarko rallied from a low of $60.50 per share on October 30, 2009 to a high of over $62.89 per share following the publication of this news. *See id.*, ¶51. The following day, Defendants filed with the SEC the Company's 3Q:09 Form 10-Q for the period ended September 30, 2009, which stated that the Company had reviewed its accounting principles, including its risk profile, and had properly reserved for, and insured against, foreseeable drilling-related contingencies. *Id.*, ¶52.

On April 20, 2010, an explosion occurred on the Deepwater Horizon drilling rig, the very same day a recommended safety-related test was cancelled. *See id.*, ¶65. On May 4, 2010, Defendants filed the Company's 1Q:10 Form 10-Q for the period ended March 31, 2010, stating, in part, "[a]s a 25% non-operating working interest owner in the Macondo well, we may incur liability under currently existing environmental regulations and we may be asked to contribute to the significant and ongoing remediation expenses." *See id.*, ¶71. That same day, Hackett was quoted saying, "We remain focused on managing through this event...Based on what we know today, we are not currently making any interruptions to our capital spending programs or strategic objectives. *See id.*, ¶72.

The Complaint alleges that Defendants' Class Period statements were materially false and misleading because, *inter alia*, Defendants knew or recklessly disregarded BP's safety record and other operational problems; Anadarko failed to have adequate systems of internal operational or

financial controls in place; and Defendants lacked any reasonable basis to claim that Anadarko was operating according to plan, or that Anadarko could achieve guidance that was claimed by Defendants.  Complaint, ¶48.  Defendants' false and misleading statements had the effect of causing Anadarko's shares to trade at artificially inflated prices during the Class Period – reaching a Class Period high of $75.75 per share on April 15, 2010.  *Id.*, ¶94.  When the truth came out concerning Anadarko's true financial results and inadequate emergency spill plan, that such a lack of a spill plan subjected the Company to billions of dollars in liability, and that Defendants understated the risk of investing in Anadarko, the Company's stock plummeted by almost 35%, from a close of $52.33 per share on May 28, 2010 to approximately $34.50 per share on June 9, 2010.  *Id.*, ¶¶95, 97.

In addition, the Complaint discusses the extensive insider sales of Hackett, Douglas, Gwin and other directors at Anadarko during the Class Period, amounting to proceeds in excess of $88 million.  Complaint, ¶102.

## III. ARGUMENT

### A. The Actions Should Be Consolidated For All Purposes

Consolidation is appropriate where there are actions involving common questions of law or fact.  Fed. R. Civ. P. 42(a); *see Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir.), *cert. denied*, 498 U.S. 920 (1990) (noting that consolidation of actions with "common questions of law and fact is commonplace").  The Actions pending before the Court each assert class claims for violation of the Exchange Act on behalf of those who purchased or otherwise acquired Anadarko securities during the Class Period.  The Actions name the same Defendants (the Company, Hackett, Douglas, and Gwin) and involve the same factual and legal issues – namely,

whether Plaintiffs purchased or otherwise acquired Anadarko publicly traded securities at prices which were artificially inflated as a result of Defendants' false and misleading statements, and whether Defendants' acts violate Sections 10(b) and 20(a) of the Exchange Act and SEC Rule 10b-5.  Accordingly, consolidation is appropriate here.  *See*, *e.g.*, *Weiss v. Friedman, Billings, Ramsey Group, Inc., et al.*, No. 05-cv-04617 (RJH), 2006 WL 197036, at *1 (S.D.N.Y. Jan. 25, 2006) ("[C]onsolidation is particularly appropriate in the context of securities class actions if the complaints are based on the same public statements and reports and defendants will not be prejudiced."); *Ferrar v. Impath, Inc.,* No. 03-5667 (DAB), 2004 WL 1637053, at *2 (S.D.N.Y. July 20, 2004) (noting that "considerations of judicial economy favor consolidation") (citations omitted).  Moreover, consolidation will result in substantial efficiencies for the Court and the parties.  Therefore, the above-captioned actions should be consolidated for all purposes.

   **B.**  **Movant Is The Most Adequate Applicant And Should Be Appointed Lead Plaintiff**

     **1.**  <u>**Compliance With The Notice And Filing Provisions Of The PSLRA**</u>

   The PSLRA establishes a procedure that governs the appointment of a lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §§78u-4(a)(1) and (a)(3)(B)(I).  *See generally City of Monroe Employees' Retirement System v. The Hartford Financial Services Group, Inc.,* No. 10-CV-2835 (NRB), 2010 WL 2816797, *1 (S.D.N.Y. July 15, 2010) (discussing the PSLRA's "three-step process for identifying the lead plaintiff").  Pursuant to this procedure, the plaintiff who files the initial action must publish a notice to the class within twenty (20) days of filing the action.  This notice must inform class members of their right to file

a motion for appointment as lead plaintiff.  *See* 15 U.S.C. §78u-4(a)(3)(A)(I).  Within sixty (60) days of publishing the notice, any person or group of persons who are members of the proposed class may apply to the court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action.  *See* 15 U.S.C. §§78u-4(a)(3)(A) and (B).

Here, notice of the filing of this action was published on June 24, 2010, following the filing of the Complaint.  *See* Exhibit "A" to the Declaration of Patrick A. Klingman ("Klingman Dec.") submitted herewith.[2]  Accordingly, the time period in which Class members may move to be appointed Lead Plaintiff in this case expires on August 23, 2010.  *See* 15 U.S.C. §78u-4(a)(3)(A) and (B).  Movant now timely moves this Court to be appointed Lead Plaintiff on behalf of all members of the proposed Class.

The Certifications of the Pension Funds Investors Group, which are collectively attached to the Klingman Dec. as Exhibit "B," state that representatives of each member of the Pension Funds Investors' Group, duly authorized to prosecute these claims, have reviewed the allegations of the Complaint and that they are willing to serve as representatives on behalf of the Class.  In addition, Movant has selected and retained competent counsel to represent it and the Class.  The firm resume for SFMS is attached as Exhibit "D" to the Klingman Dec.  Accordingly, Movant has satisfied the individual requirements of 15 U.S.C. §78u-4(a)(3)(B) and is entitled to have its Motion for Appointment as Lead Plaintiff granted, and its selection of SFMS as Lead Counsel, approved by the Court.

---

[2]The notice was issued over *Marketwire*, which meets the PSLRA's definition of a "widely-circulated national business-oriented publication or wire service."  15 U.S.C. § 78u-4(a)(3)(A)(I).  *See, e.g., Query v. Maxim Integrated Products, Inc.*, 558 F.Supp. 2d 969, 974 (N.D.Cal 2001) (*Marketwire* described as "widely circulated national business-oriented wire service").

### 2.     The Pension Funds Investors Group Suffered The Largest Loss Of Any Other Movant

The PSLRA provides that the Court shall consider any timely motion made by a class member and shall appoint as lead plaintiff the member or members of the class that the Court determines to be most capable of adequately representing the interests of class members. *See* 15 U.S.C. §78u-4(a)(3)(B). In determining the "most adequate plaintiff," the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this [Act] is the person or group of persons that
>
> > (aa) has either filed the complaint or made a motion in response to a notice...;
> >
> > (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
> >
> > (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii). *See In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95 at 98 (2005).

During the Class Period, the Pension Funds Investors' Group purchased Anadarko common stock and suffered significant losses. Specifically, as reflected in their Certifications (Exhibit "B" to the Klingman Dec.), the Pension Funds Investors' Group purchased a total of 14,282 shares of the Company's common stock during the Class Period and, after subtracting for the value of shares retained, Movant has suffered estimated losses in excess of $147,000,[3] which

---

[3] Under the PSLRA, losses are calculated as the difference between the purchase or sale price paid and the mean trading price over a ninety (90) day period beginning after the close of the class period. *See* 15 U.S.C. § 78u-4(e)(1). Here, the ninety (90) day period following the close of the Class Period, which ended on June 9, 2010, has not expired. The mean or average closing price for Anadarko common stock from June 10, 2010 through August 20, 2010 is $46.48 per share. Charts reflecting the calculation of the Pension Funds Investors' Group's losses based

demonstrates the Pension Funds Investors' Group's financial interest in the outcome of this action. To the best of Movant's knowledge, there are no other applicants seeking appointment as lead plaintiff that have a larger financial interest. Therefore, the Pension Funds Investors' Group satisfies all of the PSLRA's prerequisites for appointment as lead plaintiff in this action, and should be appointed as Lead Plaintiff pursuant to 15 U.S.C. §78u-4 (a)(3)(B).

        a.       **Aggregation Of The Pension Funds Is Appropriate**

The Operating Engineers, Hallandale and Miramar Police are the type of institutional investors that the drafters of the PSLRA sought to encourage to be appointed as lead plaintiff. Combining these types of institutional investors has been recognized in this District. *See, e.g. Juliar v. Sunopta, Inc., et al.*, No. 08-CV-933 (PAC), 2009 WL 1955237, at *2 (S.D.N.Y. Jan. 30, 2009) (granting application for lead counsel of "two institutional investors, each with significant losses"); *Reimer v. AMBAC Financial Group, Inc., et al.*, Nos. 08-CV-411 (NRB), 2008 WL 2073931, at *4 (S.D.N.Y. May 9, 2008) (granting lead plaintiff status to a group of three institutional investors). Therefore, the Court should consider the combined losses of the Pension Funds Investors' Group and appoint it as Lead Plaintiff.

        3.       **No Grounds Exist To Challenge The Pension Funds Investors' Group's Adequacy As Lead Plaintiff**

According to 15 U.S.C. §78u-4(a)(3)(B), in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." In selecting a lead plaintiff, it is well established that "typicality and adequacy of representation are the only provisions [of

---

on this mean closing price are attached as Exhibit "C" to the Klingman Dec.

Rule 23] relevant to the determination of lead plaintiff under the PSLRA." *Shi v. Sina Corp., et al.*, No. 05-CV-2154 (NRB), 2005 WL 1561438, at *2 (S.D.N.Y. July 1, 2005).  Further, only a preliminary showing of typicality and adequacy is required at this stage of the litigation.  *In re eSpeed, Inc.,* 232 F.R.D. at 102.  Movant should be appointed Lead Plaintiff because it satisfies the typicality and adequacy requirements of Rule 23.

Under Rule 23(a)(3), typicality is satisfied "where the claims arise from the same conduct from which the other class members' claims and injuries arise."  *In re eSpeed, Inc.*, 232 F.R.D. at 102.  Here, the Pension Funds Investors' Group satisfy this requirement because, just like all other Class members, Movant purchased or otherwise acquired Anadarko common stock during the Class Period; the prices at which those purchases were made were artificially inflated because of Defendants' materially false and misleading statements and/or omissions; and it suffered damages as a result of Defendants' conduct.  Thus, Movant's claims arise out of the same course of events as those of other Class members and are typical.

Under Rule 23(a)(4), the representative parties must also "fairly and adequately protect the interests of the class."  This Court has found the adequacy requirement satisfied where "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy."  *Shi,* 2005 WL 1561438, at *2.

Here, the Pension Funds Investors Group is an adequate representative of the Class.  The Pension Funds Investors' Group's substantial damages as a result of their purchases of Anadarko common stock ensures that Movant will be motivated to vigorously prosecute this case on behalf

of the Class. Further, there is no evidence of any antagonism between the Pension Funds Investors' Group and the Class. In addition, as shown below, Movant's proposed Lead Counsel are highly qualified, experienced and able to conduct this complex litigation in a professional manner. Thus, Movant satisfies the typicality and adequacy requirements of Rule 23 for the purposes of this Motion.

### C. The Court Should Approve Movant's Choice of Counsel

Pursuant to 15 U.S.C. §78u-4(a)(3)(B)(v), Movant shall, subject to Court approval, select and retain counsel to represent the class it seeks to represent. *See Kuriakose v. Federal Home Loan Mortgage Co.,* No. 08-cv-7281 (JFK), 2008 WL 4974839, at *9 (S.D.N.Y. Nov. 24, 2008). The Pension Funds have selected SFMS to serve as Lead Counsel in this case. As shown by its resume (Exhibit "D" to the Klingman Dec.), SFMS has substantial experience in the prosecution of shareholder, securities and other complex litigation, and has the resources necessary to efficiently conduct this litigation. Accordingly, the Court should approve the Pension Funds Investors' Group's selection of Lead Counsel.

## IV. CONCLUSION

For all of the foregoing reasons, Movant respectfully requests that the Court: (i) consolidate the Actions, (ii) appoint the Operating Engineers, Hallandale, and Miramar Police as Lead Plaintiff in this consolidated action and (iii) approve the Movant's selection of Shepherd, Finkelman, Miller & Shah, LLP to serve as Lead Counsel.

Dated: August 23, 2010							SHEPHERD, FINKELMAN, MILLER & SHAH, LLP

/s Patrick A. Klingman
James E. Miller
Patrick A. Klingman (PK-3658)
Karen Leser-Grenon
SHEPHERD, FINKELMAN, MILLER & SHAH, LLP
65 Main Street
Chester, CT 06412
Telephone: (860) 526-1100
Facsimile: (860) 526-1120
Email: jmiller@sfmslaw.com
       pklingman@sfmslaw.com
       kleser@sfmslaw.com

Jayne A. Goldstein
Nathan C. Zipperian
SHEPHERD, FINKELMAN, MILLER & SHAH, LLP
1640 Town Center Circle, Suite 216
Weston, FL  33326
(954) 515-0123
(954) 515-0124 (facsimile)
Email: jgoldstein@sfmslaw.com
       nzipperian@sfmslaw.com

        Scott R. Shepherd
        Eric L. Young
        SHEPHERD, FINKELMAN, MILLER & SHAH, LLP
        35 East State St.
        Media, PA 19063
        (610) 891-9880
        (610) 891-9883 (facsimile)
        Email:  sshepherd@sfmslaw.com
                eyoung@sfmslaw.com

        **Attorneys for Movant,**
        **The Pension Funds Investors Group**