UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JERRY D. GOODWIN, Individually And On Behalf of All Others Similarly Situated,<br><br>                    Plaintiff,<br><br>             v.<br><br>ANADARKO PETROLEUM CORPORATION, JAMES T. HACKETT, ROBERT G. GWIN, and M. CATHY DOUGLAS<br><br>                    Defendants. | Civil Action No.  1:10 CIV 4905 (PGG)<br><br>ECF Case |

(caption continued on subsequent page)


**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF
THE PENSION TRUST FUND FOR OPERATING ENGINEERS AND EMPLOYEES'
RETIREMENT SYSTEM OF THE GOVERNMENT OF THE VIRGIN ISLANDS FOR
(1) APPOINTMENT AS LEAD PLAINTIFF; (2) APPROVAL OF LEAD PLAINTIFF'S
SELECTION OF LEAD COUNSEL; AND (3) CONSOLIDATION OF ALL RELATED
CASES**

| | |
|---|---|
| SHIRLEY HARRIS, Individually And On Behalf of All Others Similarly Situated,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>ANADARKO PETROLEUM CORPORATION, JAMES T. HACKETT, ROBERT G. GWIN, and M. CATHY DOUGLAS,<br><br>　　　　　　Defendants. | Civil Action No.  1:10 CIV 5894 (UA) |

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ........................................................................................................ ii

INTRODUCTION ......................................................................................................................... 1

SUMMARY OF THE PENDING ACTIONS ............................................................................... 3

ARGUMENT ................................................................................................................................. 7

1. Operating Engineers and Virgin Islands Should Be Appointed Lead Plaintiff .................. 7

   a. Operating Engineers and Virgin Islands Have the Largest Financial Interest in the Relief Sought ................................................................................ 7

2. Operating Engineers and Virgin Islands Are Qualified Under Rule 23 ............................ 8

   a. The Claims of Operating Engineers and Virgin Islands Are Typical of the Claims of the Class ................................................................................... 9

   b. Operating Engineers and Virgin Islands Will Fairly and Adequately Represent the Interests of the Class ...................................................................... 10

3. This Court Should Approve Operating Engineers' and Virgin Islands' Choice of Lead Counsel ..................................................................................................................... 11

4. This Court Should Consolidate the Related Actions ....................................................... 12

CONCLUSION ............................................................................................................................ 13

## **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Albert Fadem Trust v. Citigroup Inc.*,
   239 F. Supp. 2d 344 (S.D.N.Y. 2002)..................................................................................8

*Constance Sczesny Trust v. KPMG LLP*,
   223 F.R.D. 319 (S.D.N.Y. 2004) ........................................................................................10

*Ellenburg v. JA Solar Holdings Co.*,
   262 F.R.D. 262 (S.D.N.Y. 2009) ..........................................................................................7

*Ferrari v. Impath, Inc.*,
   No. 03 Civ. 5667 (DAB), 2004 WL 1637053 (S.D.N.Y. July 20, 2004) ..........................3, 10

*Glauser v. EVCI Center Colleges Holding Corp.*,
   236 F.R.D. 184 (S.D.N.Y. 2006) ..................................................................................12, 13

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001)................................................................................................10

*In re Olsten Corp. Sec. Litig.*,
   3 F. Supp. 2d 286 (E.D.N.Y. 1998) .....................................................................................8

*Juliar v. Sunopta, Inc.*,
   No. 08 Civ. 933 (PAC), 2009 WL 1955237 (S.D.N.Y. Jan. 30, 2009) ..............................8, 9

*Kaplan v. Gelfond*,
   240 F.R.D. 88 (S.D.N.Y. 2007).......................................................................................9, 13

*Weltz v. Lee*,
   199 F.R.D. 129 (S.D.N.Y. 2001) ........................................................................................13

*Xianglin Shi v. Sina Corp.*,
   No. 05 Civ. 2154 (NRB), 2005 WL 1561438 (S.D.N.Y. July 1, 2005)..............................9, 10

**STATUTES**

15 U.S.C. § 77z-1(a)(3)(B)(v)...................................................................................................11

15 U.S.C. §§ 78j(b), 78t(a) .........................................................................................................1

15 U.S.C. § 78u-4 ............................................................................................................. *passim*

**O**THER **A**UTHORITIES

Fed. R. Civ. P. 23 ............................................................................................................... *passim*

Fed. R. Civ. P. 42(a) ...............................................................................................................1, 13

H.R. Conf. Rep. No. 104-369 (1995), *reprinted* in 1995 U.S.C.C.A.N. 730 (1995) ......................11

The Pension Trust Fund for Operating Engineers ("Operating Engineers") and the Employees' Retirement System of the Government of the Virgin Islands ("Virgin Islands"), respectfully submit this memorandum in support of their motion (i) to be appointed Lead Plaintiff pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), (ii) for approval of their selection of the law firm of Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz") as Lead Counsel for the Class, and (iii) for consolidation of all related securities class actions pursuant to Fed. R. Civ. P. 42(a).

## INTRODUCTION

Pending in this District are two class actions brought pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b), 78t(a)), and Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5). The actions allege violations of the federal securities laws by Anadarko Petroleum Corporation ("Anadarko" or the "Company"), its Chief Executive Officer, Chairman, and former President, James T. Hackett; its Chief Financial Officer and Senior Vice President of Finance, Robert G. Gwin; and its Chief Accounting Officer and Vice President, M. Cathy Douglas (collectively, "Defendants").

During the period from June 12, 2009 through June 9, 2010 (the "Class Period"), Defendants materially misled investors about the deepwater Macondo well site located in the Gulf of Mexico – a joint venture that Anadarko entered into with BP, p.l.c. ("BP") and MOEX Offshore 2007 LLC ("MOEX"). Significantly, Defendants failed to disclose to investors that the Macondo well site lacked an effective Exploration and Oil Spill Response Plan ("Spill Plan"); that BP, which operated and managed the well, routinely implemented drilling procedures that unconscionably placed cost cutting measures above safety; that the Company lacked adequate

systems of internal, operational or financial controls to maintain insurance reserves to meet the known and foreseeable risks of deepwater drilling; and that the Defendants lacked any reasonable basis to claim that Anadarko could achieve its projected guidance. Defendants' pervasive misconduct served to artificially inflate the price of Anadarko securities during the Class Period. Upon revelation of the truth about the Macondo site following the catastrophic explosion and oil spill there, the price of Anadarko securities plummeted, causing the Class to incur significant losses.

Pursuant to the PSLRA, this Court must appoint the "most adequate plaintiff" to serve as Lead Plaintiff in the related actions. 15 U.S.C. § 78u-4(a)(3)(B)(i). In making this determination, the Court must consider which movant or movants have the "largest financial interest" in the relief sought by the Class and whether there has been a *prima facie* showing that the movant is an adequate and typical class representative under Rule 23 of the Federal Rules of Civil Procedure (the "Federal Rules"). 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Operating Engineers and Virgin Islands respectfully submit that they are the "most adequate plaintiff," as defined by the PSLRA, because they have the largest financial interest in the relief sought in the related actions and otherwise satisfy the requirements of Rule 23. Indeed, Defendants' misconduct caused Operating Engineers and Virgin Islands to suffer losses of approximately $1,151,594.16 on a first-in, first-out ("FIFO") basis and $1,124,239.25 on a last-in, first-out ("LIFO") basis.[1] By virtue of their substantial investments and losses in Anadarko securities during the Class Period, Operating Engineers and Virgin Islands believe that they have

---

[1] As required by the PSLRA, Operating Engineers and Virgin Islands provided Certifications that, among other things, list their respective transactions in Anadarko securities during the Class Period. *See* Exhibit A of accompanying Declaration of Gerald H. Silk, dated August 23, 2010 (hereinafter "Silk Decl. Ex. ___"). A chart of the losses of Operating Engineers and Virgin Islands in Anadarko securities during the Class Period is attached as Silk Decl. Ex. B.

the largest financial interest in the relief sought in the related actions.  Operating Engineers and Virgin Islands also satisfy the adequacy and typicality requirements of Rule 23, and fully understand the duties and responsibilities of a Court-appointed Lead Plaintiff under the PSLRA. Accordingly, Operating Engineers and Virgin Islands are presumptively the "most adequate plaintiff" as defined by the PSLRA and should be appointed Lead Plaintiff on behalf of the Class.

Moreover, Operating Engineers and Virgin Islands are sophisticated institutional investors experienced in conducting and supervising counsel in complex securities litigation, and are therefore the paradigmatic Lead Plaintiff envisioned by the PSLRA.  *See Ferrari v. Impath, Inc.*, No. 03 Civ. 5667 (DAB), 2004 WL 1637053, at *3 (S.D.N.Y. July 20, 2004) (stating that institutional investors are the type of lead plaintiff that Congress wanted to encourage to participate in litigation and in the selection of plaintiff's counsel).  Operating Engineers and Virgin Islands have selected Bernstein Litowitz, a highly qualified law firm with substantial experience in prosecuting securities class actions, to serve as Lead Counsel for the Class.

Accordingly, and for the reasons set forth below, Operating Engineers and Virgin Islands should be appointed Lead Plaintiff, their selection of Bernstein Litowitz should be approved as Lead Counsel for the Class, and the related actions should be consolidated.

## SUMMARY OF THE PENDING ACTIONS

Anadarko, headquartered in Texas, engages in the exploration and production of oil and gas properties primarily in the United States, the deepwater of the Gulf of Mexico, and in Algeria.  The Company also markets natural gas, crude oil, condensate, and oil and natural gas liquids, in addition to owning and operating natural-gas gathering, processing, treating, and transportation systems.  Anadarko's stock is listed on the New York Stock Exchange ("NYSE") under the ticker symbol "APC."

In March 2008, BP – a company with a checkered safety record, including 760 "egregious willful" Occupation Safety and Health Administration violations – acquired a federal lease to drill the Macondo well approximately 45 miles off of the coast of Louisiana and Mississippi in the Gulf of Mexico. Despite being on notice of BP's poor safety record, Anadarko entered into a joint venture with BP and MOEX to explore the well and the surrounding area. Pursuant to the joint venture arrangement, Anadarko controls a 25% interest in the Macondo well, while BP – which operates and manages the well – controls a 65% interest, and MOEX controls a 10% interest. Drilling on the Macondo well site commenced on October 7, 2009, and, on February 6, 2010, the original rig, the Marianas, was replaced with the Deepwater Horizon rig – both rigs were leased to BP and owned and operated by Transocean Ltd., a company with its own rising tally of accidents related to deepwater drilling.

As a prominent stakeholder in the Macondo well, Anadarko maintains an independent duty, which it failed to adequately perform, to inspect and scrutinize BP's management and operation of the well, especially in light of the Company's knowledge of BP's abysmal safety record. Significantly, during the Class Period, Defendants knew or recklessly disregarded that the Spill Plan for the Macondo well site was materially deficient.[2] The Spill Plan woefully understated the dangers posed in the event of an uncontrolled leak, and vastly overstated the Company's preparedness to deal with a major disaster. Although the Spill Plan stated that resources were in place to address a worst-case scenario leak, which would be a blowout from a well of up to 250,000 barrels a day, in fact, no meaningful plan existed to handle a spill of even 5,000 barrels per day. Among other material deficiencies, the Spill Plan listed a national wildlife expert who died in 2005 as a primary contact, and included walruses, sea otters, sea lions and

---

[2] A Spill Plan is required under the Oil Pollution Act of 1990 before the Department of Interior's Mineral Management Service ("MMS") will issue an offshore drilling permit.

4

seals as "sensitive biological resources" that could be impacted by a potential spill. These animals do not live anywhere near the Gulf of Mexico. The Spill Plan also inexplicably failed to account for the Gulf's "loop current," which is capable of carrying oil hundreds of miles around Florida's southern tip, and grossly inflated the effectiveness of chemical dispersants in containing a spill.

Despite Defendants' awareness of these and other safety hazards that could impact Anadarko's business, operations, and the value of Company securities, Defendants touted, among other things, the Company's financial results, its commitment to safety and the environment, and its risk profile, which purported to properly reserve for, and insure against, known or foreseeable deepwater drilling related liabilities. Defendants' statements were materially false and misleading when made because Defendants knew that the Spill Plan for the Macondo well site was materially deficient, and concealed that BP routinely implemented drilling procedures and other project designs that sacrificed safety to cut costs. Defendants' statements also concealed that the Company lacked adequate systems of internal, operational or financial controls to address the known or foreseeable risks associated with Anadarko's deepwater drilling venture, and that, as a result, Defendants lacked a reasonable basis to claim that Anadarko could achieve its projected guidance.

The Defendants' material misstatements and omissions served to artificially inflate the value of Company securities during the Class Period, which reached a Class Period high of $75.75 per share on April 15, 2010. Defendants profited handsomely from this artificial inflation through *inter alia* Class Period sales of over $65 million in personally held Company stock.

On April 20, 2010, the Deepwater Horizon rig tragically exploded, killing 11 platform workers and injuring 17 others, as the rig began to gush millions of gallons of oil into the Gulf of

Mexico. Defendants, nevertheless, continued to issue materially false and misleading statements to investors, including representations that downplayed Anadarko's exposure to this enormous disaster. Significantly, on May 3, 2010, Anadarko issued a press release announcing results for the period ending March 31, 2010, in which the Company estimated that it would likely only incur approximately $177.5 million in liability for its part in the Deepwater Horizon tragedy. Given the scope and magnitude of the disaster this estimate was materially misleading.

On June 1, 2010, the truth about Anadarko's business, operations and management began to be revealed when it was reported that the Macondo well could not be capped and that the oil spill could not be contained. On this announcement, Anadarko's shares dropped 20%, or approximately $10 per share, from $52.33 per share on the previous day's closing to $42.10 per share, on unusually high trading volume of 44.8 million shares. Shortly thereafter, on June 9, 2010, Anadarko shares plummeted an additional 20% to approximately $34.50 per share on news revealing the material deficiencies in the Spill Plan and that Anadarko could be held responsible for over $1 billion in clean up costs – a significantly higher figure than the Company had previously represented to its investors.

The first of the related actions against the Defendants was filed by shareholder Jerry D. Goodwin on behalf of all purchasers of Anadarko common stock on June 23, 2010, and was assigned to this Court. *Goodwin v. Anadarko Petroleum Corp. et al*, No. 10-cv-4905. On June 24, 2010, Mr. Goodwin published notice of the pendency of his action on *Marketwire*, which provided an August 23, 2010 deadline to seek appointment as Lead Plaintiff. Silk Decl. Ex. C. On August 4, 2010, shareholder Shirley Harris filed the second of the related actions expanding the Class to include purchasers of all Anadarko securities. *Harris v. Anadarko Petroleum Corporation, et al*, No. 10-cv-5894. On August 5, 2010, Ms. Harris published notice of the

pendency of her action on *Business Wire*. Silk Decl. Ex. C. Operations Engineers and Virgin Islands now timely move this Court to be appointed as the Lead Plaintiff for the related actions.

## ARGUMENT

1. <u>**Operating Engineers and Virgin Islands Should Be Appointed Lead Plaintiff**</u>

Operating Engineers and Virgin Islands respectfully submit that they should be appointed Lead Plaintiff because they are the movants "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). The PSLRA sets forth the procedure for selecting the lead plaintiff in class actions arising under the securities laws and provides a presumption favoring the plaintiff with the largest financial interest in the action. Under the PSLRA, the Court "shall" adopt a presumption that the most adequate plaintiff is "the person or group of persons that…(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

    a. <u>**Operating Engineers and Virgin Islands Have the Largest Financial Interest in the Relief Sought**</u>

Operating Engineers and Virgin Islands respectfully submit that they have the largest financial interest of any movant in this action and should therefore be appointed Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii). As a result of Defendants' misconduct, and the subsequent market correction of the price of Anadarko securities, Operating Engineers and Virgin Islands sustained losses of $1,151,594.16 on a FIFO basis and $1,124,239.25 on a LIFO basis. *See* Silk Decl. Ex. B. Courts commonly employ both the "FIFO" and "LIFO" methods for calculating financial interest for purposes of appointing Lead Plaintiff under the PSLRA. *See, e.g., Ellenburg v. JA Solar Holdings Co.*, 262 F.R.D. 262, 265 (S.D.N.Y. 2009) (identifying FIFO and LIFO as two accounting methods courts use when assessing gains/losses that result from the

purchase and sale of securities).[3]  Because of their significant financial interest in this action, Operating Engineers and Virgin Islands are entitled to the statutory presumption as the most adequate plaintiff and should be appointed Lead Plaintiff on behalf of the Class.  *See, e.g. In re The Reserve Primary Fund Sec. and Deriv. Class Action Litig.*, 08-cv-08060 (S.D.N.Y.) (J. Gardephe) (appointing the movant with the greatest financial interest in the litigation as lead plaintiff).

As courts in this District have recognized, the appointment of a small group of class members as Lead Plaintiff is appropriate under the PSLRA.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see, e.g., Juliar v. Sunopta, Inc.*, No. 08 Civ. 933 (PAC), 2009 WL 1955237, at *1 (S.D.N.Y. Jan. 30, 2009) (appointing group of two pension funds as lead plaintiff).  Accordingly, the appointment of Operating Engineers and Virgin Islands is appropriate under the PSLRA, and their financial interests are properly aggregated for purposes of seeking appointment as Lead Plaintiff.

### 2. Operating Engineers and Virgin Islands Are Qualified Under Rule 23

Operating Engineers and Virgin Islands should also be appointed Lead Plaintiff because they otherwise satisfy "the requirements of Rule 23 of the Federal Rules of Civil Procedure." *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc); *Albert Fadem Trust v. Citigroup Inc.*, 239 F. Supp. 2d 344, 347 (S.D.N.Y. 2002); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 294 (E.D.N.Y. 1998); *Sunopta*, 2009 WL 1955237, at *1.

Of the four prerequisites to class certification, "typicality and adequacy of representation are the only provisions [of Rule 23] relevant to the determination of lead plaintiff under the

---

[3] Under the FIFO method, sales are offset against the movant's inventory of securities acquisitions, starting with the earliest and moving chronologically forward. Under the LIFO method, sales are offset against the movant's inventory of securities acquisitions, starting with the latest and moving chronologically backward.

PSLRA." *Kaplan v. Gelfond*, 240 F.R.D. 88, 94 (S.D.N.Y. 2007) (Buchwald, J.) (citation omitted); *see Sunopta,* 2009 WL 1955237, at *1. Furthermore, "at this stage of litigation, only a preliminary showing of typicality and adequacy is required." *Kaplan,* 240 F.R.D. at 94 (citing *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 102 (S.D.N.Y. 2005)). As detailed below, Operating Engineers and Virgin Islands unquestionably satisfy these requirements.

### a. The Claims of Operating Engineers and Virgin Islands Are Typical of the Claims of the Class

Operating Engineers and Virgin Islands satisfy the typicality requirements of Rule 23. Typicality can be established by showing that the claims of the proposed lead plaintiff "arise from the same conduct from which the other class members' claims and injuries arise." *Xianglin Shi v. Sina Corp.*, No. 05 Civ. 2154 (NRB), 2005 WL 1561438, at *3 (S.D.N.Y. July 1, 2005) (Buchwald, J.) (internal citation and quotation marks omitted).

The claims of Operating Engineers and Virgin Islands are typical of the claims of the members of the proposed Class. Operating Engineers and Virgin Islands satisfy the typicality requirement because, just like all other Class members, they: (1) purchased or otherwise acquired Anadarko securities during the Class Period; (2) at prices allegedly artificially inflated by Defendants' materially false and misleading statements and/or omissions; and (3) suffered damages when the truth about the Company was subsequently revealed. *See Xianglin Shi*, 2005 WL 1561438, at *3 (finding typicality where movant "executed stock trades during the proposed class period at prices alleged to have been affected by the alleged conduct of the defendants" because "[t]hese claims are similar in substance to the allegations of the other class members, who claim similar injuries"). As such, Operating Engineers and Virgin Islands have identical, non-competing and non-conflicting interests with members of the Class in establishing Defendants' liability.

9

### b.     Operating Engineers and Virgin Islands Will Fairly and Adequately Represent the Interests of the Class

Rule 23(a)(4) requires that the representative party will "fairly and adequately protect the interests of the Class."  The PSLRA directs the Court to limit its inquiry regarding adequacy to: (1) whether there are any conflicts between the interests of the movant and the members of the class; (2) whether the movant is an adequate representative of the class; (3) whether the interests of the movant are aligned with the members of the class; and (4) whether there is evidence of any antagonism between the interests of the movant and the class.  15 U.S.C. § 78u 4(a)(3)(B)(iii)(I)(cc).  Adequacy of representation will be found if the moving party is represented by able and experienced counsel, and has no fundamental conflicts of interest with the class as a whole. *See Constance Sczesny Trust v. KPMG LLP*, 223 F.R.D. 319, 324 (S.D.N.Y. 2004).

As sophisticated institutional investors, Operating Engineers and Virgin Islands are not merely adequate, but are the paradigmatic investors that Congress envisioned to lead securities class actions. *See In re The Reserve Primary Fund Sec. and Deriv. Class action Litig.*, 08-cv-08060 (S.D.N.Y.) (J. Gardephe) (holding that sophisticated institutional investor was exactly the type of investor that congress intended to serve as lead plaintiff in a PSLRA case); *Xianglin Shi*, 2005 WL 1561438, at *5 ("Because the size and experience of institutional investors can be of significant assistance to the prosecution of the action, a number of courts 'have understood [the PSLRA] to favor large institutional investors' as lead plaintiff.'") (citation omitted); *Ferrari*, 2004 WL 1637053, at *3 (stating that institutional investors are the type of lead plaintiff that Congress sought to encourage to participate in securities litigation and to exercise control over the selection and actions of plaintiff's counsel); *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 264 (3d Cir. 2001) (noting that the legislative intent of the PSLRA is to encourage large institutional investors to serve as lead plaintiff).

Having suffered substantial losses of $1,151,594.16 on a FIFO basis and $1,124,239.25 on a LIFO basis as a result of Defendants' misconduct, Operating Engineers and Virgin Islands have a significant financial interest in the litigation and can be counted on to vigorously pursue a recovery for the Class from all culpable parties. As such, the interests of Operating Engineers and Virgin Islands are perfectly aligned with those of the Class, and there is no evidence of any antagonism between Operating Engineers, Virgin Islands and the Class. In addition, and as is further demonstrated in their Certifications, Operating Engineers and Virgin Islands each have experience serving as Lead Plaintiff under the PSLRA and understand the importance of having an engaged Lead Plaintiff monitor the litigation and supervise counsel. *See, e.g., In re Renaissancere Holdings Ltd. Sec. Litig.*, Case No. 05-cv-06764 (S.D.N.Y.) (J. Pauley); *Western Pennsylvania Electrical Employees Pension Fund v. Candela Corporation, et al.*, Case No. 08-cv-10551 (D. Mass.). Operating Engineers and Virgin Islands have also demonstrated their adequacy by retaining highly experienced counsel, timely seeking appointment as Lead Plaintiff, and submitting Certifications reflecting their understanding of the obligations owed by the Lead Plaintiff to the Class. *See* Silk Decl. Ex. A. Thus, Operating Engineers and Virgin Islands have the requisite experience and expertise to vigorously represent the Class in leading this action, and have satisfied the adequacy requirement of Rule 23 of the Federal Rules.

### 3. This Court Should Approve Operating Engineers' and Virgin Islands' Choice of Lead Counsel

The PSLRA vests authority in the Lead Plaintiff to select and retain lead counsel, subject to the Court's approval. *See* 15 U.S.C. § 77z-1(a)(3)(B)(v); 15 U.S.C. § 78u-4(a)(3)(B)(v). Courts should not disturb the lead plaintiff's choice of counsel unless necessary to "protect the interests of the plaintiff class." H.R. Conf. Rep. No. 104-369 (1995), at *35, *reprinted* in 1995

U.S.C.C.A.N. 730, 734 (1995). Operating Engineers and Virgin Islands have retained highly-qualified counsel to serve as Lead Counsel for the Class.

As this Court has recognized, Bernstein Litowitz is among the preeminent securities class action law firms in the country, having been appointed sole or co-lead counsel in numerous complex securities class actions in this District and around the country. *See, e.g. In re The Reserve Primary Fund Sec. and Deriv. Class Action Litig.*, 08-cv-08060 (S.D.N.Y.) (J. Gardephe) (holding that Bernstein Litowitz is "well-qualified" to serve as lead counsel and noting that the "firm has served as lead counsel in some of the most significant securities class actions that have been brought in this district."); Bernstein Litowitz's Firm Biography attached as Silk Decl. Ex. D. Significantly, Bernstein Litowitz served as co-lead counsel in *In re WorldCom, Inc. Securities Litigation*, No. 02-cv-03288-DLC (S.D.N.Y.), in which settlements totaling in excess of $6 billion – one of the largest recoveries in securities class action history – were obtained for the class. Other examples in which courts have recognized Bernstein Litowitz as adequate and qualified class counsel in securities class actions include *In re Nortel Networks Corp. Securities Litigation*, No. 05-MD-1659 (LAP) (S.D.N.Y.), *Glauser v. EVCI Center Colleges Holding Corp.*, 236 F.R.D. 184, 190 (S.D.N.Y. 2006) (appointing Bernstein Litowitz as lead counsel and noting that "Bernstein Litowitz is a highly competent and respected law firm, specializing in securities class actions."), and *In re Bristol-Myers Squibb Co. Securities Litigation*, 07-cv-5867 (PAC) (S.D.N.Y.). Accordingly, the Court should approve Operating Engineers' and Virgin Islands' selection of Bernstein Litowitz as Lead Counsel for the Class.

4.  **This Court Should Consolidate the Related Actions**

The two related securities class actions presently pending in this District are as follows:

| Case | Civil No. | Date Filed |
|---|---|---|
| *Goodwin v. Anadarko Petroleum Corporation, et al* | 10-CV-4905 | June 23, 2010 |
| *Harris v. Anadarko Petroleum Corporation, et al* | 10-CV-5894 | August 4, 2010 |

These actions present virtually identical factual and legal issues, as they both arise out of the same alleged misstatements and omissions regarding the management and operation of the Macondo well site and Anadarko's finances and internal controls, and both assert claims under Sections 10(b) and 20(a) of the Exchange Act. Accordingly, consolidation is appropriate under Rule 42(a) of the Federal Rules. *See, e.g., Glauser,* 236 F.R.D. at 186 ("[T]his Court has recognized that consolidation is particularly appropriate in the context of securities class actions if the complaints are based on the same public statements and reports.") (internal quotation marks omitted); *Kaplan*, 240 F.R.D. at 92 (ordering consolidation where actions contained overlapping factual allegations that "defendants' statements to the investing public misrepresented or omitted to state material facts about the financial status of [the defendants]"); *Weltz v. Lee*, 199 F.R.D. 129, 131 (S.D.N.Y. 2001) ("In securities actions where the complaints are based on the same 'public statements and reports,' consolidation is appropriate if there are common questions of law and fact and the defendants will not be prejudiced.") (internal citation omitted).

## CONCLUSION

For the above reasons, Operating Engineers and Virgin Islands respectfully request that the Court: (1) appoint Operating Engineers and Virgin Islands as the Lead Plaintiff in the related actions; (2) approve their choice of Lead Counsel for the Class; and (3) consolidate the related actions.

Dated: August 23, 2010
New York, New York

Respectfully submitted,

**BERNSTEIN LITOWITZ BERGER  
 & GROSSMANN LLP**

By:   /s/ Gerald H. Silk
Gerald H. Silk (GS-4565)
Avi Josefson (AJ-3532)
Laurence J. Hasson (LH-5834)
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 554 1400
Facsimile:  (212) 554 1444

**BERNSTEIN LITOWITZ BERGER  
 & GROSSMANN LLP**
Blair A. Nicholas
12481 High Bluff Drive
Suite 300
San Diego, CA 92130
Telephone: (858) 793-0070
Facsimile:  (858) 793-0323

*Counsel for Operating Engineers, Virgin Islands, and Proposed Lead Counsel for the Class*

14