UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JERRY D. GOODWIN,
Individually and On Behalf of All Others
Similarly Situated,

                Plaintiffs,

v.

ANADARKO PETROLEUM CORP., et al.,

                Defendants.

SHIRLEY HARRIS,
Individually and On Behalf of All Others
Similarly Situated,

                Plaintiffs,

v.

ANADARKO PETROLEUM CORP., et al.,

                Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/16/10

**ORDER**

10 Civ. 04905 (PGG)

10 Civ. 05894 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

       This action arises from the April 20, 2010 Macondo/Deep Water Horizon rig explosion in the Gulf of Mexico and the subsequent drop in share price of common stock in Anadarko Petroleum Corporation, a 25% owner of the well. The Pension Trust Fund for Operating Engineers and the Employees' Retirement System of the Government of the Virgin Islands ("Operating Engineers and Virgin Islands") and the Pension Funds Investors' Group ("Pension Funds Investors") filed competing motions for appointment as Lead Plaintiff and to

approve their choice of Lead Counsel. The parties also filed motions to consolidate the above-captioned actions.

On September 3, 2010, however, the Pension Funds Investors – in recognition of the larger losses reported by Operating Engineers and Virgin Islands – "respectfully submit[ted] that [Operating Engineers and Virgin Islands] should be appointed as Lead Plaintiff." (Pension Funds Investors Sept. 3, 2010 Response at 2)  For the reasons discussed below, this Court will designate the Pension Trust Fund for Operating Engineers and the Employees' Retirement System of the Government of the Virgin Islands to serve as Lead Plaintiff, and its counsel, Berstein Litowitz Berger & Grossman, LLP, to serve as Lead Counsel.

## I.   SELECTION OF LEAD PLAINTIFF

### A.   Private Securities Litigation Reform Act Factors

#### 1.   Financial Interest

The Private Securities Litigation Reform Act ("PSLRA") directs the district court to "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 77z-1(a)(3)(B).  Under the PSLRA, there is a rebuttable presumption that the movant which "has the largest financial interest in the relief sought by the class" is the "most adequate plaintiff."  Id.  This presumption may be rebutted "only upon proof by a member of the purported plaintiff class" that the presumptive lead plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class."  Id. § 78u-4(a)(3)(B)(iii)(II); see In re Bank of Am. Corp. Sec., Derivative & ERISA Litig., 258 F.R.D. 260, 268 (S.D.N.Y. 2009).

"The PSLRA does not specify a method for calculating which plaintiff has the 'largest financial interest. . . .'" In re Fuwei Films Sec. Litig., 247 F.R.D. 432, 436-37 (S.D.N.Y. 2008). Many courts in this district, however, have determined a prospective lead plaintiff's financial interest by looking to "(1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered." Id. (citing Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co., 229 F.R.D. 395, 404 (S.D.N.Y. 2004); In re Olsten Corp. Sec. Litig., 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998); Lax v. First Merchs. Acceptance Corp., No. 97 Civ. 2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997)); In re Orion Sec. Litig., No. 08 Civ. 1328 (RJS), 2008 WL 2811358, at *4 (S.D.N.Y. July 8, 2008); Andrada v. Atherogenics, Inc., No. 05 Civ. 061 (RJH), 2005 WL 912359, at *3 (S.D.N.Y. April 19, 2005). This Court, like many other courts, will "'place the most emphasis on the last of the four factors: the approximate loss suffered by the movant.'" In re Orion, 2008 WL 2811358, at *5 (quoting Kaplan v. Gelfond, 240 F.R.D. 88, 93 (S.D.N.Y. 2007)).

The chart below[1] makes clear that the financial interest of the Operating Engineers and Virgin Islands in Anadarko Petroleum far exceeds the interest held by the Pension Funds Investors:

---

[1] The data set forth in the chart are drawn from declarations filed by the Operating Engineers and Virgin Islands, and by the Pension Funds Investors. (See Silk Decl., Ex. B; Klingman Decl., Ex. C)

3

| Movant | Shares Purchased During the Class Period | Shares Sold During the Class Period | Approximate Losses[2] |
|---|---|---|---|
| Int'l Union of Operating Engineers | 9,612 | 4,707 | $45,671.47 |
| Hallendale Beach Police & Firefighters' Fund | 3,320 | 0 | $72,435.00 |
| Miramar Police Retirement Fund | 1,350 | 0 | $29,453.10 |
| **Pension Funds Investors Total** | **14,282** | **4,707** | **$147,559.57** |
| Pension Trust for Operating Engineers | 86,081 | LIFO: 51,296 or FIFO: 49,496 | LIFO: $698,329.04 or FIFO: $725,683.94 |
| Virgin Islands | 22,550 | 0 | LIFO: $378,337.14 FIFO: $378,337.14 |
| **Operating Engineers & Virgin Islands Total** | **108,631** | **LIFO: 51,296 or FIFO: 49,496** | **LIFO: $1,124,239.25**[3] **or FIFO: $1,151,594.16** |

Regardless of whether losses are calculated in a last-in, first-out basis ("LIFO") or first-in, first-out basis ("FIFO"), Operating Engineers and Virgin Islands suffered far greater losses than did the Pension Funds Investors. The Pension Fund Investors purchased 14,282 shares during the class period and sustained a loss of $147,559.57. (Klingman Decl., Ex. C) In contrast, Operating Engineers and Virgin Islands purchased 108,631 shares during the class period and sustained a loss of $1,124,239.25, when measured using a last-in, first-out calculation. See City of Monroe Emp'rs. Ret. Sys. v. Hartford Fin. Servs. Grp., Inc., No. 10 Civ. 2835 (NRB), 2010 WL 2816797, at *4 (S.D.N.Y. July 15, 2010) ("While the PSLRA does not

---

[2] The parties have calculated their respective losses during the class period at a price of $46.48 per share of common stock. (See Silk Decl., Ex. B; Klingman Decl., Ex. C)

[3] All references to Operating Engineers and Virgin Islands' total losses under LIFO or FIFO calculations reflect losses on common stock as well as corporate bond losses of $47,573.07.

4

address which method of loss calculation should be employed, courts in this district and others have stated a preference for LIFO over FIFO in assessing loss for purposes of the appointment of lead plaintiff."); Kuriakose v. Fed. Home Loan Mortg. Co., No. 08 CV 7281 (JFK), 2008 WL 4974839, *3 (S.D.N.Y. Nov. 24, 2008) ("To calculate losses, courts favor the LIFO accounting method over FIFO."); Vladimir v. Bioenvision, Inc., No. 07 Civ. 6416 (AJP), 2007 WL 4526532, *5 (S.D.N.Y. Dec. 21, 2007) ("Many courts favor the LIFO method to calculate the financial stake of movants for lead plaintiff status in securities class actions."). Under a first-in, first-out analysis, Operating Engineers and Virgin Islands sustained an even greater loss of $1,151,594.16. Thus, under either calculation, there is no question that the Operating Engineers and Virgin Islands have the largest financial interest. Accordingly, there is a rebuttable presumption that they are the most adequate plaintiff. See 15 U.S.C. § 77z-1(a)(3)(B).

### 2. Suitability As Lead Plaintiff

The plain language of the PSLRA contemplates that a group may serve as lead plaintiff. Barnet v. Elan Corp., PLC., 236 F.R.D. 158, 162 (S.D.N.Y. 2005) (citing Mitchell v. Complete Mgmt., Inc., No. 99 Civ. 1454 (DAB), 1999 WL 728678, at *3 (S.D.N.Y. Sept. 17, 1999)) ("[T]he PSLRA provides that the presumptively most adequate lead plaintiff is 'the person or group of persons' that has 'the largest financial interest.'"). In order to be appointed lead plaintiff, a proposed group must show that its unrelated members "will be able to function cohesively and to effectively manage the litigation apart from their lawyers . . . ." Varghese v. China Shenghuo Pharm. Holdings, Inc., 589 F. Supp. 2d 388, 392 (S.D.N.Y. 2008). Courts in this district consider a variety of factors in making this determination, including the sophistication of group members and whether the group was formed in bad faith – i.e., was created by lawyers for purposes of the litigation. Varghese, 589 F. Supp. 2d at 392-93 (citing In

re Tarragon Corp. Sec. Litig., No. 07 Civ. 7972, 2007 WL 4302732, at *1 (S.D.N.Y. Dec. 6, 2007)); see also Barnet, 236 F.R.D. at 162.

Analysis of the factors set forth in Varghese and Barnet indicates that Operating Engineers and Virgin Islands are well-equipped to serve as lead plaintiff. As to sophistication, Operating Engineers and Virgin Islands – as pension funds – are exactly the type of sophisticated institutional investors that Congress intended to serve as lead plaintiff in PSLRA cases. See In re Bank of Am. Corp. Sec., Derivative and ERISA Litig., 258 F.R.D. at 270 (noting that a group comprised of large public pension funds are "the type of sophisticated institutional investors envisioned by Congress in the enactment of the PSLRA"). Operating Engineers and Virgin Islands are also sophisticated and experienced in supervising complex litigation: each has previously served as the lead plaintiff under the PSLRA in at least three class actions brought under federal securities laws. (Silk Decl., Ex. A) In sum, Operating Engineers and Virgin Islands are sophisticated investors fully capable of directing this litigation.

A court may reject a proposed group as lead plaintiff if it was formed in bad faith, that is, "assembled as a makeshift by attorneys for the purpose of amassing an aggregation of investors purported to have the greatest financial interest in the action." Varghese, 589 F. Supp. 2d at 392-93. A proposed lead plaintiff group is not formed in bad faith where the individual members of that group each have a greater financial interest than any other lead plaintiff movant, however. See Barnet, 236 F.R.D. at 162 ("[There is no] evidence that the Institutional Investor Group was formed in bad faith. Indeed, even were the Court to deconstruct the Group, two of its individual members would still have the 'largest financial interest.'"). Here, Operating Engineers and Virgin Islands each separately have a greater financial interest than any of the individual entities in the Pension Funds Investors' Group. (See supra at 4) There is likewise no

6

evidence that this group was formed in bad faith. For all of these reasons, it is appropriate to appoint a group, composed of Operating Engineers and Virgin Islands, as Lead Plaintiff.

## B. Rule 23 Typicality and Adequacy Requirements

To qualify to serve as Lead Plaintiff, Operating Engineers and Virgin Islands must also satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B). At this stage of the litigation, however, the lead plaintiff movant must satisfy only the typicality and adequacy requirements set forth in Rule 23(a), Kaplan, 240 F.R.D. at 94; In re Oxford Health Plans, Inc. Sec. Litig., 182 F.R.D. 42, 49 (S.D.N.Y. 1998), and need only make a preliminary prima facie showing that these requirements are met. Varghese, 589 F. Supp. 2d at 397; Freudenberg v. E*Trade Fin. Corp., No. 07 Civ. 8538, 2008 WL 2876373, at *5 (S.D.N.Y. July 16, 2008).

### 1. Typicality

Operating Engineers and Virgin Islands' claims are typical of the shareholder class. The typicality requirement "is satisfied when all claims arise from the same course of events, and each class member makes similar legal arguments to prove a defendant's liability." In re Smith Barney Transfer Agent Litig., No. 05 Civ. 7583 (WHP), 2006 WL 991003, at *3 (S.D.N.Y. Apr. 17, 2006) (citing Robinson v. Metro-North Commuter R.R. Co., 267 F.3d 147, 155 (2d Cir. 2001)); In re Oxford Health Plans, Inc. Sec. Litig., 182 F.R.D. at 49.

Here, Operating Engineers and Virgin Islands, like other class members, have alleged claims arising from reliance on statements made, and omissions of, Andarko Petroleum during the class period concerning the Exploration and Oil Spill Response Plan, drilling procedures and project designs, and internal controls at the Macondo well site. These claims allege that the Defendants' misstatements and omissions caused Andarko securities to be artificially inflated in value, and thus violated Sections 10(b) and 20(a) of the Exchange Act (15

U.S.C. §§ 78j(b), 78t(a)) and Rule 10b-5 of the Securities and Exchange Commission (17 C.F.R. § 240.10b-5). In sum, the claims of Operating Engineers and Virgin Islands are not only interrelated with the claims of other class members, but are essentially identical to those claims.

### 2. Adequacy

Operating Engineers and Virgin Islands are also adequate to represent the class. In determining whether a proposed lead plaintiff will adequately protect the interests of a class, courts consider whether: "(1) . . . the proposed class counsel is qualified, experienced, and generally able to conduct the litigation; (2) . . . the proposed lead plaintiff has interests that are antagonistic to other class members; and (3) . . . the proposed lead plaintiff and the class possess sufficient interest to pursue vigorous prosecution of their claims." See Varghese, 589 F. Supp. 2d at 397 (quoting Kuriakose v. Federal Home Loan Mortgage Co., No. 08 Civ. 7281, 2008 WL 4974839, at *4 (S.D.N.Y. Nov. 24, 2008)).

Here, analysis of these factors demonstrates that Operating Engineers and Virgin Islands are adequate to protect the interests of the class. First, proposed class counsel is qualified, experienced, and generally able to conduct the litigation. Bernstein Litowitz has served as lead counsel in numerous significant securities class actions, including in connection with four of the ten largest securities class action recoveries in history. (Silk Decl., Ex. D) Second, Operating Engineers and Virgin Islands do not have interests antagonistic to other class members, given that their claims are essentially identical to those of other class members. There is likewise no evidence that Operating Engineers and Virgin Islands have any conflict of interest or that their claims are susceptible to a unique defense. In sum, the interests of Operating Engineers and Virgin Islands appear to be fully aligned with those of the class. Finally, Operating Engineers and Virgin Islands possess a significant interest in the outcome of the litigation, as they have allegedly sustained losses ranging from $1,124,239.25 to $1,151,594.16.

8

For all of these reasons, the Court appoints Operating Engineers and Virgin Islands as Lead Plaintiff.

## II.     SELECTION OF LEAD COUNSEL

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), the "most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." See also Seidel v. Noah Educ. Holdings Ltd., No. 08 Civ. 9203 (RJS), 2009 WL 700782, at *5 (S.D.N.Y. Mar. 9, 2009).

Here, Lead Plaintiff Operating Engineers and Virgin Islands have selected Berstein Litowitz Berger & Grossman, LLP as Lead Counsel. This firm has served as lead counsel in numerous significant class actions and is qualified to serve as Lead Counsel in this matter. Accordingly, Berstein Litowitz Berger & Grossman, LLP is hereby appointed to serve as Lead Counsel for the Class.

Lead Counsel shall be responsible for:

(1) Signing any future amended complaints, motions, briefs, discovery requests, objections, stipulations, or notices on behalf of plaintiffs for any matters arising during pretrial proceedings;

(2) Conducting all pretrial proceedings on behalf of plaintiffs;

(3) Briefing and arguing motions;

(4) Initiating and conducting discovery;

(5) Speaking on behalf of plaintiffs at any pretrial conference;

(6) Employing and consulting with experts;

(7) Conducting settlement negotiations with defense counsel on behalf of plaintiffs;

(8) Calling meetings of plaintiffs' counsel;

(9) Accepting service on behalf of all plaintiffs;

(10) Distributing to all plaintiffs' counsel copies of all notices, orders, and decisions of this Court, including this order;

(11) Maintaining an up-to-date list of counsel available to all plaintiffs' counsel on request; and

(12) Keeping a complete file of all papers and discovery materials filed or generated in this action, which shall be available to all plaintiffs' counsel at reasonable hours.

### III. CONSOLIDATION OF THE RELATED CLASS ACTIONS

Fed. R. Civ. P. 42(a) provides that a district court may consolidate "actions before the court involv[ing] a common question of law or fact." See Fed. R. Civ. P. 42(a). "'A determination on the issue of consolidation is left to the sound discretion of the court,'" In re UBS Auction Rate Sec. Litig., No. 08 Civ. 2967 (LMM), 2008 WL 2796592, at *4 (S.D.N.Y. July 16, 2008) (quoting Albert Fadem Trust v. Citigroup Inc., 239 F. Supp. 2d 344, 347 (S.D.N.Y. 2002)), and involves weighing considerations of convenience, judicial economy and cost reduction while insuring that the "paramount concern for a fair and impartial trial" is honored. Johnson v. Celotex Corp., 899 F.2d 1281, 1284, 1285 (2d Cir. 1990).

Here, there are compelling reasons to consolidate these class actions for pretrial purposes. As an initial matter, both class actions arise from the same alleged misrepresentations or omissions by Anadarko regarding the Macondo well site in the Gulf of Mexico. (Cmplt. ¶¶ 6, 71, Goodwin v. Anadarko Petroleum Corp., et al., No. 10 Civ. 4905; Cmplt. ¶¶ 5, 6, Harris v. Anadarko Petroleum Corp., et al., No. 10 Civ. 5894) Furthermore, the parties both assert similar claims under Sections 10(b) and 20(a) of the Exchange Act and there is substantial overlap as to named defendants. (Cmplt. ¶¶ 98, 10, Goodwin v. Anadarko Petroleum Corp., et al., No. 10 Civ. 4905; Cmplt. ¶¶ 109, 119, Harris v. Anadarko Petroleum Corp., et al., No. 10 Civ. 5894) Accordingly, pursuant to Rule 42(a), these two actions – as well as any other related Anadarko

Petroleum Corporation class actions hereafter filed in or hereafter transferred to this Court – are consolidated for pre-trial purposes.

These actions shall be referred to collectively as In re: Anadarko Petroleum Corp., No. 10 Civ. 4905 (PGG) (the "Consolidated Anadarko Petroleum Corp. Class Action"). The Clerk of this Court shall file a copy of this Order in the separate file for each of the above-captioned Anadarko Petroleum Corporation class action cases. Unless otherwise ordered by this Court, future filings in any Anadarko Petroleum Corporation class action case herein consolidated shall be filed and docketed only under docket number 10-cv-4905-PGG. All counsel who have entered appearances in any of the above-captioned class action cases shall be deemed to have entered an appearance in the Consolidated Anadarko Petroleum Corp. Class Action under the docket number 10-cv-4905-PGG. All motions for admission pro hac vice and all orders granting such motions in any of the two above-captioned actions shall also be deemed filed in the Consolidated Anadarko Petroleum Corp. Class Action under the docket number 10-cv-4905-PGG.

This Court requests the assistance of counsel in calling to the attention of the Clerk of this Court the filing or transfer of any cases that might properly be consolidated as part of this litigation. Any class action involving substantially related questions of law and fact hereafter filed in or transferred to this Court shall be consolidated under the master file number assigned to this case.

Every pleading filed in the Consolidated Anadarko Petroleum Corp. Class Action shall bear the following caption:

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re ANADARKO PETROLEUM CORP. CLASS ACTION LITIGATION | 10 Civ. 4905 (PGG) |

      No action taken hereunder shall have the effect of making any person, firm, or corporation a party to any action in which the person or entity has not been named, served, or added as such in accordance with the Federal Rules of Civil Procedure.

### IV.    SCHEDULING AND ADMINISTRATION

      Plaintiffs and Defendants in the Consolidated Anadarko Petroleum Corp. Class Action will confer to discuss a schedule for pleadings, including deadlines for the filing and service of:

    (1) A consolidated amended complaint for the Consolidated Anadarko Petroleum Corp. Class Action;

    (2) Defendants' responses to the consolidated amended complaint; and

    (3) A briefing schedule for any motions to dismiss the consolidated amended complaint.

      By December 1, 2010, Plaintiffs and Defendants in the Consolidated Anadarko Petroleum Corp. Class Action will submit to this Court a joint letter containing their proposed schedule for the filing and service of such pleadings and motion papers.

      The parties are directed to consult Paragraph 3(C) of this Court's Individual Practices before filing any motion papers.

      Pending filing and service of a consolidated amended complaint, Defendants in the above-captioned class action cases shall have no obligation to move, answer, or otherwise

respond to any of the complaints in the actions consolidated herein or any actions subsequently consolidated with them for all purposes pursuant to Rule 42(a).

The complaints in the individual consolidated actions shall be deemed withdrawn and shall be dismissed ten days after the filing of the consolidated amended complaint, unless the plaintiffs that initially filed said complaint, no later than ten days after the consolidated amended complaint's filing, show cause why their complaint should not be dismissed.

In issuing this Order, this Court makes no ruling and expresses no opinion on any class certification issues, and defendants are deemed to have reserved all rights to oppose certification of a putative class.

## CONCLUSION

For the foregoing reasons, Operating Engineers and Virgin Islands' motion for appointment as Lead Plaintiff, for approval of Bernstein Litowitz Berger & Grossman LLP as Lead Counsel, and for consolidation of all related securities class actions is GRANTED [10 Civ. 4905, Docket No. 8].

Pension Fund Investors' motion for appointment as Lead Plaintiff and for approval of its selection for Lead Counsel is DENIED, and its motion for consolidation is GRANTED [10 Civ. 4905, Docket No. 5].

The Clerk of the Court is directed to terminate the following motions: 10 Civ. 4905, Docket Nos. 5, 8.

Dated: New York, New York
       November 15, 2010

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge